| | |
|---|---|
| 1 | NOSSAMAN LLP |
| | Allan H. Ickowitz (SBN 80994) |
| 2 | John W. Kim (SBN 216251) |
| 3 | 777 S. Figueroa Street, 34th Floor |
| | Los Angeles, California  90017 |
| 4 | Telephone:  213.612.7800 |
| | Facsimile:  213.612.7801 |
| 5 | jkim@nossaman.com |
| | aickowitz@nossaman.com |
| 6 | |
| | and |
| 7 | |
| 8 | Kathryn R. Norcross, Senior Counsel |
| | Nicholas Katsonis, Counsel |
| 9 | Federal Deposit Insurance Corporation, Legal Division |
| | 3501 Fairfax Drive Room D-7092 |
| 10 | Arlington, Virginia 22226-3500 |
| | Telephone: 703-562-2089 |
| 11 | |
| | Attorneys for the Federal Deposit Insurance Corporation |
| 12 | as Receiver of Los Padres Bank, Solvang, California |

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No: 9:10-bk-14677-RR |
| HARRINGTON WEST FINANCIAL GROUP, INC., | Chapter 11 |
| Debtor. | **OBJECTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION TO DEBTOR HARRINGTON WEST FINANCIAL GROUP, INC.'S "*FIRST AMENDED PLAN OF LIQUIDATION*" AND "*PLAN SUPPLEMENT FILED IN SUPPORT OF DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION*"; DECLARATION OF JOHN W. KIM** |
| | [Dkt. Nos. 63 & 75] |
| | <u>**Confirmation Hearing:**</u> |
| | Date:        September 14, 2011 |
| | Time:        11:00 a.m. |
| | Place:       Courtroom 201 |
| |               1415 State Street |
| |               Santa Barbara, CA 93101-2511 |

411074_1.DOC

OBJECTION TO PLAN SUPPLEMENT FILED IN SUPPORT OF DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................1

II.  LEGAL ARGUMENT .........................................................................................................2

   A.   Summary Of Legal Arguments ..................................................................................2

   B.   The Plan Is Not Confirmable Because There Is No Basis To Pay Class 4
        Indenture Trustee Claims Ahead Of Class 3 Claims ..................................................3

   C.   The Plan Cannot Be Confirmed Because It Is Contrary To The Senior Rights
        Of The Fdic-R Under The Indentures .........................................................................4

   D.   The Plan Is Not Confirmable Because The Liquidating Trustee Was Not
        Selected By The Unsecured Creditors ........................................................................6

   E.   The Plan Fails Because There May Be No Consenting Impaired Class ....................7

   F.   The Plan Violates The Absolute Priority Rule ...........................................................7

   G.   The Plan Is Not Confirmable Because It Proposes Unfettered Blanket
        Injunctions ...................................................................................................................7

   H.   The Plan Provisions Regarding Retention Of Jurisdiction And Injunction
        Relief Are Overbroad And Impermissible ..................................................................8

III. RESERVATION OF RIGHTS .............................................................................................9

IV.  CONCLUSION ....................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**
*Everett v. Perez*, 30 F.3d 1209 (9th Cir. 1994) ........................................................................... 3
*In re AOV Industries*, 792 F.2d 1140 (D.C. Cir. 1986) ................................................................ 3
*In re Cajun Elec. Power Cooperative Inc.*, 230 B.R. 715 (Bankr. M.D. La. 1999) ..................... 3
*In re Capital Services & Invest., Inc.*, 90 B.R. 382 (Bankr. C.D. Ill. 1988) ................................ 6
*In re Credit Indus. Corp.*, 366 F.2d 402 (2d Cir. 1966) .............................................................. 6
*In re Discon Corp.*, 346 F. Supp. 839 (S.D. Fla. 1971) .............................................................. 4
*In re Kors, Inc.*, 819 F.2d 19 (2d Cir. 1987) ............................................................................... 6
*In re Mihalko*, 18 C.B.C.2d 1387, 87 B.R. 357 (Bankr. E.D. Pa. 1988) ..................................... 6
*In re Union Meeting Partners*, 165 B.R. 553 (Bankr. E.D. Pa. 1994) ....................................... 3
*Stern v. Marshall*, U.S. 131 S.Ct. 2594 (2011) ........................................................................... 8

**Statutes**
11 U.S.C. § 101 ............................................................................................................................ 1
11 U.S.C. § 1104(a) ..................................................................................................................... 6
11 U.S.C. § 1129(a)(1) .......................................................................................................... 2, 6, 7
11 U.S.C. § 1129(a)(10) ............................................................................................................... 7
11 U.S.C. § 1129(a)(7) .............................................................................................................. 4, 6
11 U.S.C. § 1129(b)(2)(B) ........................................................................................................... 7
11 U.S.C. § 1141(d)(3) ................................................................................................................ 8
11 U.S.C. § 503(b)(5) .............................................................................................................. 3, 4
11 U.S.C. § 510(c) ....................................................................................................................... 6
11 U.S.C. § 524(e) ....................................................................................................................... 7
11 U.S.C. § 702(a) ....................................................................................................................... 6
28 U.S.C. §157 ............................................................................................................................ 8

**Other Authorities**
7 Collier on Bankruptcy § 1129.03[1] ......................................................................................... 2

**Regulations**
63 Fed. Reg. 64757 (Nov. 23, 1998) ............................................................................................ 5

The Federal Deposit Insurance Corporation, as Receiver of Los Padres Bank, Solvang, California (*"FDIC-R"*), a creditor of the above-referenced debtor and debtor-in-possession, Harrington West Financial Group, Inc. (the *"Debtor"* or *"Holding Company"*, as applicable), hereby files this objection to the *Debtor's First Amended Plan of Liquidation* and *Plan Supplement Filed in Support of Debtor's First Amended Plan of Liquidation* (the *"Plan"*)[1]. In support of the objection (the *"Objection"*), the FDIC-R respectfully states as follows:

## I. INTRODUCTION

Procedural History

On August 20, 2010, Los Padres Bank, Solvang, California (*"Bank"*) was closed by the Federal Office of Thrift Supervision (*"OTS"*). The FDIC was duly appointed as the Receiver of the Bank. The Bank was a wholly owned subsidiary of the Debtor. The Debtor was the Bank's holding company for purposes of applicable laws and regulations governing such holding companies.

On September 10, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 et seq.). No trustee or examiner has been appointed in the above referenced bankruptcy case, and the United States Trustee has not appointed an Official Committee on Unsecured Creditors in the bankruptcy case.

The FDIC-R's Claim

The FDIC-R filed its proof of claim on March 9, 2011 (Claim No. 12) (the *"Claim"*). The Claim asserts that the Debtor is liable to the FDIC-R for (i) certain capital maintenance obligations, (ii) fraudulent transfer claims, and (iii) charges payable to the Bank pursuant to the Administrative Services Agreement to which the Bank and Debtor were parties. The Claim also sets forth the basis for the FDIC-R's ownership of certain tax refunds payable on account of consolidated tax returns, amended returns and refund claims filed on behalf of the consolidated group including the Debtor and the Bank (*"Tax Refunds"*). The Debtor estimates that the Tax Refunds will total over $9 million. The parties dispute who owns the Tax Refunds. A true and correct copy of the Claim is attached to the Decl. of John W. Kim (*"Kim Decl."*), ¶ 2, Exh. A.

---

[1] Counsel for the FDIC-R and Debtor were able to consensually resolve various matters relating to the Disclosure Statement to Plan. Both parties reserved all rights with respect to any confirmation issued relating to the Plan.

411074_1.DOC    1

**OBJECTION TO PLAN SUPPLEMENT FILED IN SUPPORT OF DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION**

The Claim provides that to the extent the FDIC-R does not own the Tax Refunds, the FDIC-R asserts a creditor claim against the Debtor. In the first instance, the FDIC-R asserts that it is entitled to recover the Tax Refunds as the owner thereof under applicable law and independent of the claim process in the Debtor's bankruptcy case. That right is described in the Claim for informational purposes and solely to preserve a distributive claim if the FDIC-R does not prevail on the ownership issue. Sections 2.1 and 2.3 of the Amended Tax Sharing Agreement entered into by the Holding Company and Bank on January 1, 1997 as described in the Claim (the *"TSA"*) provides that any refund received by the Debtor as the parent company in the consolidated group (including the Debtor and the Bank) must be paid to the Bank to the extent such refund is allocable to the Bank. Such payment must be made within seven business days after receipt by the Debtor. The FDIC-R further asserts as stated in its Claim that any Tax Refunds received by the Debtor are held on behalf of and as agent for the Bank and the Debtor has no rights to use or expend such funds. The Debtor, and the Liquidating Trustee who is appointed pursuant to the Plan, will contend that to the extent that the Tax Refunds are not the Bank's property, the Debtor's obligation to remit the Tax Refunds to the extent allocable to the Bank is in the nature of a mere debt obligation. The Debtor will argue that this obligation creates a mere debtor-creditor relationship, as opposed to a principal-agency or trustee-beneficiary relationship. The determination of who owns the Tax Refunds is not at issue in these Plan confirmation proceedings.[2] However, it is clear that independent of any claim in connection with the Tax Refunds, the FDIC-R is a significant creditor in this case.

## II. LEGAL ARGUMENT

### A.    SUMMARY OF LEGAL ARGUMENTS

The case law applying section 1129(a)(1) of the Bankruptcy Code unequivocally provides that a "court shall confirm a plan only if the plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). In drafting section 1129(a)(1), Congress mandated that a plan comply with the applicable provisions of chapter 11 governing classification and contents of the plan. 7 COLLIER ON BANKRUPTCY § 1129.03[1] (Allan N. Resnick & Henry S. Sommer eds., 16th ed.). Where the

---

[2]    The parties have stipulated that all disputed Tax Refunds will be held in a third party escrow account until a determination of ownership has been made.

provisions of a plan violate sections of the Bankruptcy Code, such violations require denial of plan confirmation. *See, e.g., In re AOV Industries*, 792 F.2d 1140, 1154 (D.C. Cir. 1986), *vacated in party on other grounds*, 797 F.2d 1004 (D.C. Cir. 1986); *In re Cajun Elec. Power Cooperative Inc.*, 230 B.R. 715, 733 (Bankr. M.D. La. 1999); *In re Union Meeting Partners*, 165 B.R. 553, 567 (Bankr. E.D. Pa. 1994); *Everett v. Perez*, 30 F.3d 1209, 1213 (9th Cir. 1994).

The Plan is not confirmable for the following seven reasons.

### B. THE PLAN IS NOT CONFIRMABLE BECAUSE THERE IS NO BASIS TO PAY CLASS 4 INDENTURE TRUSTEE CLAIMS AHEAD OF CLASS 3 CLAIMS

The Plan proposes to pay the post-petition fees of the Indenture Trustees prior to the unsecured portion of the FDIC-R's Claim (Class 3) and *pari passu* with any administrative priority claim. Plan, § II.B.1.(b)(ii). These fees are not administrative claims. There is no basis under the Bankruptcy Code or the terms of the indentures to treat the fees as administrative expense claims. Additionally, the Plan proposes to pay the Indenture Trustee's post-Effective Date[3] fees subject only to the submission of monthly statements to the Liquidating Trustee and United States Trustee. The Plan requires no notice to any other creditor and provides no creditor the opportunity to review these fees. Plan, pg. 13:12-19. Neither the Plan nor the Disclosure Statement describes any services that the Indenture Trustee would provide for the Liquidating Trust which cannot be performed by the Liquidating Trustee. There is no rational basis for providing monthly compensation to the Indenture Trustee under any circumstances.

There is also no basis to provide for any payments (fees incurred post-petition or post-Effective Date) to the Indenture Trustees prior to the full payment of allowed claims of the FDIC-R or any other Class 3 claims. In fact, as more fully discussed below, pursuant to the language of the Indentures, the FDIC-R's Claim is "senior" to any Class 4 claims, including fees, filed by the Indenture Trustees.

The only possible ground for payment of the Indenture Trustees' pre-Effective Date fees would be pursuant to 11 U.S.C. § 503(b)(5) which provides for:

> "reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services and the cost of comparable services other than in a case under this title."

---

[3] All capitalized terms not defined herein shall have the meanings ascribed in the Plan.

411074_1.DOC                    3
**OBJECTION TO PLAN SUPPLEMENT FILED IN SUPPORT OF DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION**

Here, there is no assertion by any party that the Indenture Trustees have made a "substantial contribution." Any activities in which the Indenture Trustees engaged were intended to benefit the subordinated creditors to secure their advantage over senior claims. The Indenture Trustees have not contributed to resolving the key dispute in this case, the dispute between the bankruptcy estate and the FDIC-R respecting ownership of the Tax Refunds, because no such litigation has been commenced to date.

Moreover, this case is not a reorganization proceeding. The Plan proposed here is nothing more than a vehicle for liquidating the Debtor's assets which could have been accomplished with fewer professionals or a filing under chapter 7. The "substantial contribution" factor under Section 503(b)(5) is not satisfied.

### C. THE PLAN CANNOT BE CONFIRMED BECAUSE IT IS CONTRARY TO THE SENIOR RIGHTS OF THE FDIC-R UNDER THE INDENTURES

The Plan fails to satisfy the requirements of 11 U.S.C. § 1129(a)(7) since it provides that senior and subordinated indenture claims are treated on a parity with each other. The FDIC-R's Claim under Class 3 is senior to the claims of the indenture trustee under Class 4. Yet, the Plan proposes to pay Class 3 and Class 4 claims pro rata even though the FDIC-R's senior Claim would be entitled to a greater distribution under a chapter 7 liquidation. Parity treatment of Classes 3 and 4 under the Plan would result in the distribution to a non-accepting holder of senior claims being less than it would in a chapter 7 liquidation proceeding. 11 U.S.C. § 1129(a)(7); *In re Discon Corp.*, 346 F. Supp. 839 (S.D. Fla. 1971).

The Plan classifies the Indenture Trustee Claims (two series of bond indentures) in Class 4. Plan, Section II.C.4, pg. 15. The Plan proposes to pay allowed Class 4 claims a Pro Rata Share of each Distribution available to the Holders of Class 3 Claims. Class 3 Claims consist of the claims held by general unsecured creditors. The FDIC-R is classified as a Class 3 Claim to the extent it is not deemed to own the Tax Refunds or is deemed an administrative priority. As a result, the Plan contemplates that the holders of Indenture Trustee Claims would have parity with the FDIC-R.

The proposed treatment of the FDIC-R and Indenture Trustee claims in parity is not only contrary to Section 1129(a)(7) but also the express terms of the two Indentures. True and correct copies

of the Indentures are attached to the Kim Decl. ¶ 3, Exh. B.

Article XV, Section 15.01 of each of the two Indentures provides:

"The payment by the Company [Debtor] of the payments due on all Debt Securities issued hereunder and under any Additional Provisions shall, to the extent and in the manner hereinafter set forth, be subordinated and junior in right of payment to the prior payment in full of all Senior Indebtedness of the Company, whether outstanding at the date of this Indenture of thereafter incurred."

Further, Section 15.03 of the Indentures provides that in the event of the Holding Company's liquidation or bankruptcy, no payment or distribution shall be made to any holder of claims under the Indentures, i.e., Class 4 claims, until all Senior Indebtedness has been paid in full. Similarly, Section 15.02 provides that no payments shall be made on account of the Indenture Trustee Claims during any default in the payment of any amounts due under the Senior Indebtedness. The Indentures each define "Senior Indebtedness" on page 6 thereof as including "(i) the principal, premium, if any, and interest in respect of (A) indebtedness of the Company for money borrowed and (B) indebtedness evidenced by securities, debentures, notes, bonds or other similar instruments issued by the Company...."[4]

The FDIC-R's claim is a Class 3 claim that is senior to the claims of the Class 4 Indenture claims. That is, to the extent the Debtor prevails in its argument that the TSA creates a debtor-creditor relationship with respect to the Tax Refunds, such Tax Refunds are a debt of money borrowed by the Holding Company from the Bank. Thus, if the Debtor prevails on the issue of ownership with respect to any portion of the Tax Refunds and such amounts are determined payable as unsecured (rather than administrative expense priority) claims in favor of the FDIC-R, such obligations would be based upon the Debtor's borrowing such amounts from the Bank and, therefore, would constitute Senior Indebtedness in favor of the FDIC-R. *See* "Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure." 63 Fed. Reg. 64757 (Nov. 23, 1998). A true and correct copy of the Interagency Policy is attached to the Kim Decl., ¶ 4, Exh. C. As such, the FDIC-R's Claim is a senior debt by the express terms of the Indentures.[5]

---

[4] The Indentures further provide that any payments received by the Indenture Trustee contrary to the foregoing are held in trust for the holders of Senior Indebtedness subject to their rights and remedies. The FDIC-reserves all rights related thereto against the Indentures, the Debtor and any successors-in-interest.

[5] The FDIC-R disputes the assertion that the TSA creates a debtor-creditor relationship. This issue is not briefed because it is not before the Court at this time.

411074_1.DOC    5

**OBJECTION TO PLAN SUPPLEMENT FILED IN SUPPORT OF DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION**

11 U.S.C. § 510(c) states that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." *See, e.g., In re Kors, Inc.*, 819 F.2d 19 (2d Cir. 1987); *In re Credit Indus. Corp.*, 366 F.2d 402 (2d Cir. 1966); *In re Mihalko*, 18 C.B.C.2d 1387, 87 B.R. 357 (Bankr. E.D. Pa. 1988). The fact that the Debtor has separately classified the senior claims (Class 3) and the subordinated claims (Class 4) does not remedy the fact that the Debtor's proposed *pari passu* treatment of these claims is contrary to Sections 510(c), 1129(a)(7) and the express terms of the Indentures. Moreover, insofar as the Plan is contrary to the foregoing provisions of the Bankruptcy Code, it cannot be confirmed by operation of 11 U.S.C. § 1129(a)(1).

### D. THE PLAN IS NOT CONFIRMABLE BECAUSE THE LIQUIDATING TRUSTEE WAS NOT SELECTED BY THE UNSECURED CREDITORS

The focus of the Plan is to approve the Liquidating Trust Agreement which would transfer and vest substantially all of the Debtor's assets under the control of a "Liquidating Trustee." Based on the Plan Supplement filed on August 10, 2011, the Liquidating Trustee was selected by the Debtor (with the support of the Indentures) without the consultation of the FDIC-R or any unsecured creditors. This is true despite the fact that the FDIC-R asked to be consulted about the appointment of a liquidating trustee so that a trustee that was acceptable to all major unsecured creditors would be selected. Kim Decl., ¶ 5. Under the Plan, and consistent with the Bankruptcy Code, all entitlements to distributions after satisfaction of Classes 1 and 2, will belong to general unsecured creditors in Class 3 and the Indenture Trustee Claims under Class 4. While Class 4 was consulted, Class 3 (the FDIC-R) does not support the nominated Liquidating Trustee at this time. Unless there is a surplus, equity interests have no stake in the outcome of this liquidation case. As a result, selection of the Liquidating Trustee should be by the unsecured creditors consistent with applicable bankruptcy law. *See* 11 U.S.C. § 1104(a); *In re Capital Services & Invest., Inc.*, 90 B.R. 382 (Bankr. C.D. Ill. 1988) (Applying Section 1104(a), the court held that the creditors' committee should have been given an opportunity to offer their input into the selection of the trustee; *see also* 11 U.S.C. § 702(a). The only significant asset remaining in this estate is the estate's claim to the Tax Refunds. Accordingly, it is unfair for the post-confirmation estate to be under the control of a person selected by the Debtor's principals rather than the general creditor body.

### E. THE PLAN FAILS BECAUSE THERE MAY BE NO CONSENTING IMPAIRED CLASS

The Plan fails to satisfy the requirements of 11 U.S.C. § 1129(a)(10) because there is no consenting impaired class assuming that the Class 4 unsecured creditors do not vote to accept the Plan. The FDIC-R as a class 3 claimant has not accepted the plan.

### F. THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE

The Plan cannot be confirmed because it does not satisfy the requirements of the absolute priority rule under 11 U.S.C. § 1129(b)(2)(B). To the extent the FDIC-R holds an unsecured claim that is senior to Class 4 indentured claims, the Plan must propose to pay the FDIC-R's claim in full before any distributions are made on account of any allowed Class 4 claims.

### G. THE PLAN IS NOT CONFIRMABLE BECAUSE IT PROPOSES UNFETTERED BLANKET INJUNCTIONS

The Plan violates sections 1129(a)(1) and 524(e) of the Bankruptcy Code by affecting the liability and/or obligations of a non-debtor party. Specifically, the Plan violates the Bankruptcy Code by including a blanket injunction against any party from "commencing, conducting or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind against the Debtor, its Estate, the Liquidating Trust, or the Liquidating Trustee, their successors or their respective property or assets (including without limitation, all suits, actions, and proceedings that are pending as of the Effective Date which will be deemed to be withdrawn or dismissed with prejudice)." Plan, Section X. B. 1, page 31, lines 13 to 17. Even more broad is the vague proposed injunction against proceeding "in any manner in any place whatsoever" against any of the Debtor, its Estate, the Liquidating Trust, or the Liquidating Trustee "that does not conform to or comply with the provisions of the Plan." Plan, Section X. B. 4., page 31, lines 25 to 27.

There is no legal basis in the Bankruptcy Code for either of these injunctions. Courts disfavor the inclusion of "kitchen sink" restraints that seek to provide undue leverage against other parties in the bankruptcy proceedings. 11 U.S.C. § 524(e). There is nothing in the bankruptcy law that gives a liquidating trustee the right to deprive creditor and other parties of the ability to be the plaintiff in litigation regarding disputed assets or other issues which is what these injunctions would achieve.

There is no basis under the Bankruptcy Code for such injunctions in this case. The Debtor is not entitled to receive a discharge or discharge injunction pursuant to 11 U.S.C. § 1141(d)(3) since the Debtor is a corporation, is liquidating all of its assets and already has terminated all of its business operations. The foregoing injunctive provisions should be stricken from the Plan before it can be confirmed.

### H. THE PLAN PROVISIONS REGARDING RETENTION OF JURISDICTION AND INJUNCTION RELIEF ARE OVERBROAD AND IMPERMISSIBLE

Section IX of the Plan sets forth a list of matters with respect to which the Bankruptcy Court would retain "exclusive jurisdiction" without any limitation or recognition of the legal limits of such jurisdiction and without preserving the rights of parties to assert such limitations. Section IX.C. of the Plan would grant the bankruptcy court exclusive jurisdiction to "hear and determine any and all adversary proceedings, application, motions and contested matters instituted prior to the closing of the Chapter 11 Case". Section IX. K provides exclusive jurisdiction to "hear and determine any action to recover assets of the Estate, wherever located, including any and all Estate Causes of Action."

The overbroad attempt at compelling jurisdiction is particularly problematic since the anticipated Tax Refunds litigation is based on a dispute that exists independent of the Bankruptcy Case or bankruptcy law and that would require litigation under non-bankruptcy law even if there were no bankruptcy filing. There are substantial grounds for characterizing such litigation as non-core proceedings for purposes of 28 U.S.C. §157. Moreover, under the recent decision of the United States Supreme Court in *Stern v. Marshall*, U.S. 131 S.Ct. 2594 (2011), there are substantial questions regarding the bankruptcy court's jurisdiction in private disputes between a debtor and other parties like those respecting the Tax Refunds that are not determined as part of the claims allowance process.

While the jurisdictional and core/non-core questions are not issues that must be decided by the court in plan confirmation proceedings, the jurisdictional Plan language is objectionable. No such retention of jurisdiction in the Plan should affect the substantive right of any party to assert that the bankruptcy court does not have exclusive jurisdiction of any matter or proceeding, that any such matter or proceeding is a non-core proceeding or that any reference of such matter to the bankruptcy court should be withdrawn and that the rights to seek appropriate relief based thereon are expressly reserved.

## III. RESERVATION OF RIGHTS

The FDIC-R reserves all of its rights to raise any further objection to the Plan at the confirmation hearing or by supplemental written objection.

## IV. CONCLUSION

For the foregoing reasons, together with those presented at the confirmation hearing, the FDIC-R requests that its objection be sustained and confirmation of the Plan be denied to the extent necessary to protect the FDIC-R's rights and remedies, together with such other relief as the Court shall deem just and appropriate.

Dated: August 24, 2011

NOSSAMAN LLP
Allan H. Ickowitz
John W. Kim

By: _____
JOHN W. KIM
Attorneys for Federal Deposit Insurance Corporation as Receiver of Los Padres Bank, Solvang, California

### DECLARATION OF JOHN W. KIM

I, John W. Kim, declare:

1. I am an attorney-at-law and I am a partner of the firm Nossaman LLP, counsel for the Federal Deposit Insurance Corporation in its capacities as Receiver of Los Padres Bank, Solvang, California in the above-entitled action. I have personal knowledge of the matters set forth herein and if called upon to do so, I could and could competently testify as to them.

2. The FDIC-R filed its proof of claim on March 9, 2011 (Claim No. 12) (the "*Claim*"). A true and correct copy of the Claim is attached hereto as Exh. A.

3. The Plan classifies the Indenture Trustee Claims (two series of bond indentures) in Class 4. Plan, Section II.C.4, pg. 15. True and correct copies of the two Indentures are attached hereto as Exh. B.

4. A true and correct copy of the "Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure." 63 Fed. Reg. 64757 (Nov. 23, 1998) is attached hereto as Exh. C.

5. As set forth in the Plan Supplement filed on August 10, 2011, the Liquidating Trustee was selected without the consultation or consent of the FDIC-R. The FDIC-R asked to be consulted about the appointment of a liquidating trustee so that a trustee that was acceptable to the FDIC-R would be selected.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of August 2011, at Los Angeles, California.

_____
JOHN W. KIM